UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
                                    )
         v.                         )   CRIMINAL ACTION
                                    )   NO. 04-40023-FDS
JOSE SANTOS BUENO,                  )
         Defendant.                 )
_____)

ORDER ON
GOVERNMENT'S MOTION FOR DETENTION
October 8, 2004

**SWARTWOOD, M.J.**

   I.   Nature Of The Offense And The Government's Motion

   On September 8, 2004, a One Count Indictment was returned charging Jose Santos Bueno ("Mr. Santos Bueno") with transportation of Illegal Aliens in violation of 18 U.S.C. § 1324(a)(1)(A)(ii).

   At Mr. Santos Bueno's initial appearance on the underlying Complaint (which charged the same offense for which Mr. Santos Bueno has been indicted), held before Magistrate Judge Cohen on August 16, 2004, the Government moved for a detention hearing in accordance with 18 U.S.C. §§ 3142(f)(2)(A)(risk of flight).  On August 18, 2004, after hearing, Magistrate Judge Cohen found probable cause existed for the charge against Mr. Santos Bueno and

Mr. Santos Bueno consented to an Order of detention, reserving his right to a detention hearing in the future. Order of Detention (Docket No. 4). Subsequently, Mr. Santos Bueno was indicted and arraigned.

On October 7, 2004, a detention hearing was held and at that hearing, Glen Fitzpatrick, Special Agent with the Bureau of Immigration and Customs Enforcement ("ICE") testified on behalf of the Government and was cross-examined by Mr. Santos Bueno's counsel.

## II.  Findings of Fact

1. On Friday, August 13, 2004, ICE Boston received information that a white passenger van, with Texas license plate 7CFPO7, was en route to the Boston area and was carrying multiple Brazilian nationals who were illegally present in the United States. Gov't Ex. 1.

2. Massachusetts State Police spotted the vehicle traveling east on the Massachusetts turnpike. The police stopped the van for speeding in Southboro, Massachusetts. Id.

3. As they approached the van, the officers observed a number of people in the van. Mr. Santos Bueno, who was driving the van, was asked for his identification. Mr. Santos Bueno told the officers that he and another individual in the van were transporting the passengers from Texas to places throughout the United States. Id.

4.   The seven "passengers" were determined to be Brazilian nationals who were in the United States illegally.  Each of them had a Brazilian passport, which indicated that they had entered Mexico.  None of the passengers had a required United States visa or any other form of immigration document indicating legal entry into the United States.  There was no luggage in the van, other than a single backpack.  Id.

5.   After investigation, it was determined that each of the Brazilians had paid or agreed to pay from $2,500 to $11,000 to be smuggled into the United States.  It was further determined that the Brazilians had been smuggled across the United States/Mexican border and brought to Dallas, Texas where they were eventually met by Mr. Santos Bueno and another individual.  Originally, there were fourteen Brazilian nationals in the van, seven of which were dropped off at various locations prior to coming to the Boston area.  Id.

6.   In the van, law enforcement officials found a list which contained: fourteen names, including the names of the seven Brazilians in the van at the time of the stop; the notation "paid" with respect to each of the seven; a destination; and a telephone contact number.  The letterhead at the top of the list indicated a company name of "Oxford Tours".  Id.; Gov't Ex. 3.

7.   After being advised of his *Miranda* rights, Mr. Santos Bueno consented to being interviewed by ICE investigators.  Mr.

Santos Bueno acknowledged that he and another individual were paid to drive the van from Dallas, TX to, among other places, Massachusetts. This was Mr. Santos Bueno's first time driving for this company. Mr. Santos Bueno met an individual known as "Junior" at a gas station in Dallas. The van was full of people. Junior gave Mr. Santos Bueno the list described above which contained the passengers names. Mr. Santos Bueno was told as he got close to the location where each passenger was to be dropped off, he was to call the contact number listed for that passenger so the passenger could be picked up by a family member. When Mr. Santos Bueno asked Junior whether the passengers were "illegal", he was told to work and not ask questions. Gov't Ex. 1.

8.   Mr. Santos Bueno admitted that based on their appearance, he thought the passengers were illegally in the country. For example, Mr. Santos Bueno felt that if the passengers were legal, they would have taken a bus rather than crammed into a van. Mr. Santos Bueno also indicated that he knew they were illegal because he had previously illegally entered the United States by crossing the border. Id.; Gov't Ex 2.

9.   Mr. Santos Bueno admitted that he knew it was illegal to drive illegal aliens from Texas to Boston, but he needed the money. Mr. Santos Bueno was to be paid between $400 and $600 when he returned to Texas. Gov't Ex. 1; Gov't Ex. 2.

10.  Mr. Santos Bueno also told the investigators that the passengers had stated in conversations that they had entered the United States by crossing the border the week before. Gov't Ex 1. A number of the Brazilians, who were "passengers" on the van, agreed to be deposed by counsel for Mr. Santos Bueno.  All of the deponents testified that they had not had any conversations with Mr. Santos Bueno.

### III. Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a).  Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e).  The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited

exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562 (1986). See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of

the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of

imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c).  In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary.  <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

   (1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

   (2)  the weight of the evidence against the person;

   (3)  the history and characteristics of the person, including:

      (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B)  whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

   (4)  the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

IV. <u>Discussion of Whether Detention is Warranted</u>

A. <u>Mr. Santos Bueno's History and Characteristics</u>

Mr. Santos Bueno was born in Mexico on December 15, 1971. Mr. Santos Bueno lived in Mexico until he entered the United States illegally approximately eight years ago.

Mr. Santos Bueno is married to a United States citizen and the couple has one child, a five year old girl. <u>Def's Exs. B,C,D,E</u>. For the past five years, Mr. Santos Bueno and his family have lived in Dallas, Texas with his wife's parents, who are United States Citizens, in a house owned by them. <u>Def's Exs. A,F,G</u>. For the first 2½ years that he was in the United States, Mr. Santos Bueno lived with his sister in Dallas.

Mr. Santos Bueno's parents and one of his brothers reside in Mexico. Mr. Santos Bueno has one sister living in Dallas, one sister living in California, a third sister living in Colorado and three brothers who live in Texas.

ICE has initiated an investigation to determine whether Mr. Santos is subject to removal and has lodged a detainer against Mr. Santos Bueno. <u>Gov't Ex. 4</u>. Mr. Santos Bueno previously filed a change of status application which is currently pending. A hearing on that application is scheduled for next week.

Mr. Santos Bueno had previously worked as a driver for various companies and was steadily employed until being injured in a work related accident this past spring. Mr. Santos Bueno was

hospitalized for over a month as a result of the accident and has been unemployed since.

Mr. Santos Bueno has no criminal record.

### B. Nature of the Offense; Weight of the Evidence; Government's Burden; and Risk of Flight

#### 1. Nature of the Offense

Mr. Santos Bueno is charged with the unlawful transportation of illegal aliens. If Mr. Santos Bueno is found guilty of this offense, he faces a ten-year maximum penalty, with a more likely sentence of ten to sixteen months. There is also a substantial likelihood that Mr. Santos Bueno would be deported following any period of incarceration for this offense.

#### 2. Weight of the Evidence

Bearing in mind that Mr. Santos Bueno is presumed innocent, the Court must nevertheless consider the weight of the evidence against him. Magistrate Judge Cohen previously found probable cause for the alleged offense. After being advised of his *Miranda* rights, Mr. Santos Bueno admitted that he believed that the passengers he was transporting from Texas to the East Coast were illegal and that he knows it is illegal to transport illegal aliens. Therefore, I further find that the evidence against Mr. Santos Bueno is substantial.

#### 3. Government's Burden

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(2)(A). The Government must prove that there is

no condition or combination of conditions that would reasonably assure the appearance of Mr. Santos Bueno, as required.

The Government's burden of proof is by *preponderance of the evidence* that Mr. Santos Bueno, if released, would not appear as required.

    4.   <u>Whether Santos Bueno Poses a Risk of Flight</u>

Mr. Santos Bueno is an illegal alien who faces a period of incarceration of ten to sixteen months followed by deportation if he is found guilty of the offense charged in this Indictment. Mr. Santos Bueno has strong family ties to Texas, where his wife, child and in-laws (who are all United States Citizens) reside. Mr. Santos Bueno has filed an application to change his status to that of a legal permanent resident. However, the fact that Mr. Santos Bueno has been charged in this Indictment jeopardizes that application. Mr. Santos Bueno lived in Mexico until illegally entering the United States eight years ago and his parents and a brother still reside in Mexico.

Counsel for Mr. Santos Bueno made persuasive arguments for releasing Mr. Santos Bueno (who would be transferred to ICE custody) so that he could attempt to pursue his change of status application and if released by ICE, reside with his family in Dallas. Therefore, considering the totality of the circumstances, including the strength of the Government's case, the fact that Mr. Santos Bueno is currently in this country illegally and his strong

ties to Mexico, where he has resided most of his life, I find by a preponderance of the evidence that Mr. Santos Bueno poses a risk of flight and that there are no conditions or combination of conditions that can be imposed to assure his appearance in this Court as required.

V. <u>Order of Detention Pending Trial</u>

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Mr. Santos Bueno be committed to the custody of the Attorney General, or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Mr. Santos Bueno be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Santos Bueno is detained and confined shall deliver Mr. Santos Bueno to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

    THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

<u>/s/ Charles B. Swartwood</u><br>
CHARLES B. SWARTWOOD, III<br>
MAGISTRATE JUDGE