UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-40023-FDS |
| | ) | |
| JOSE SANTOS-BUENO, | ) | |
| Defendant | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
<u>MOTION FOR REVIEW OF DETENTION ORDER</u>

Now comes the United States, by its attorneys, Michael J. Sullivan, United States Attorney, and Paul G. Casey, Assistant U.S. Attorney, and hereby files this response to the motion of Defendant Jose Santos-Bueno to review and appeal a detention order, pursuant to 18 U.S.C. § 3145(b). For the reasons stated below, the motion should be denied without a hearing.

## FACTS

**Procedural Background**

On August 13, 2004, Jose Santos-Bueno was charged by complaint with conspiracy to distribute and possession with intent to distribute heroin. <u>See</u> Exhibit A. At a preliminary hearing/detention hearing held before United States Magistrate Judge Lawrence Cohen on August 16, 2004, the government moved for detention pursuant to 18 U.S.C. §3142(f)(2)(A), and presented the testimony of ICE Special Agent Glen Fitzpatrick in support of the motion. After Magistrate Judge Cohen found probable cause, Defendant Santos-Bueno voluntarily assented to an order of

1

detention.

On September 8, 2004, a federal grand jury returned an indictment charging Santos-Bueno with transportation of illegal aliens in violation of 8 U.S.C. §1324(a)(1)(A)(ii). See Exhibit B.

On October 7, 2004, a detention hearing was held before the Honorable Charles B. Swartwood, III. After hearing testimony from S/A Fitzpatrick and considering evidence presented, Magistrate Judge Swartwood entered an order detaining Defendant Santos-Bueno as a flight risk, pursuant to 18 U.S.C. §3142(f)(2)(A). See Exhibit C.

**Factual Background**

On Friday August 13, 2004, ICE Boston received information that a passenger van, white in color, bearing Texas license plate 7CFP07, was traveling to the Boston area with multiple Brazilian nationals illegally present within the United States. Exhibit C, p. 2.

Massachusetts State Police located the vehicle speeding eastbound on the Massachusetts Turnpike and made a traffic stop of the vehicle in Southboro, MA, based upon the excessive speed of the vehicle. Id.

A trooper approached the vehicle and observed a number of people in the van. The trooper requested further information about the vehicle from the driver, Defendant Santos-Bueno. Id.;

see also Exhibit A, p. 4. The defendant presented the trooper with a Texas drivers license and indicated he and another driver, later identified as Enrique Malagon-Lara, were transporting passengers from Texas to Massachusetts and other locations within the United States. Id.; see also, Exhibit A, p. 4.

ICE agents on the scene identified the seven passengers as Brazilian nationals illegally within the United States. Exhibit A, p. 5. ICE agents learned from the passengers that the seven passengers were all Brazilian nationals who recently left Brazil, traveled to Mexico, and were now present illegally in the United States. Id. Further investigation also revealed that one of the passengers had previously been deported from the United States. Id. Each of the seven aliens had a Brazilian passport, which indicated that each recently traveled from Brazil into Mexico. Id. None of the seven aliens had a required United States visa or other form of immigration document which indicated a legal entry into the United States. Id. Except for a single backpack, none of the passengers had any luggage in the van. Id.; see also, Exhibit C, p. 3.

The passengers were interviewed and told agents that they paid or agreed to pay between $2,500.00 and $11,000.00 in United States currency to be smuggled into the United States. Exhibit C, p. 3. Each of the aliens arrived in Mexico within the month preceding the stop by the police and then were smuggled across

the United States/Mexico border and were eventually transported to the Dallas, Texas area. Id. Once in Dallas, the aliens were met by Santos-Bueno and Malagon-Lara who drove the van from Texas to Massachusetts. Originally there were fourteen passengers in the van, but seven of the passengers were dropped off at various locations, including Virginia, New York, and Connecticut while en route to Massachusetts. Id.

Agents also recovered various papers lying on the floor of the van between the driver's and front passenger's seat. This list contained, among other things, the names of the "passengers" in the van at the time it was stopped; the notation "paid" with respect to each of the seven; a destination; and a telephone contact. The letterhead on the list indicates a company name of "Oxford Tours." See Exhibit A, p. 6; Exhibit C. p. 3. A copy of the list is attached as Exhibit D.

Santos-Bueno was advised of his Miranda rights in his native language, and after agreeing to waive those rights, Santos-Bueno spoke to investigators. See Exhibit A, p. 8; Exhibit C, p. 4. Santos-Bueno admitted to two ICE agents that he and Malagon-Lara were paid to drive the vehicle in question and its passengers from Texas to Virginia, New York, Connecticut, and Massachusetts. Id. He stated that this was his first time driving for the tour company. He stated that a man known to him as "Junior" met him at a gas station in Dallas, Texas with the van in question full

of people and provided Santos-Bueno with a paper with the name "Oxford Tours" across the top. Id. Santos-Bueno also stated that the paper contained a list of fourteen individuals whose names corresponded to the passengers in the van. Id. According to Santos-Bueno, "Junior" instructed him to call the contact telephone numbers on the list when he was getting close to the destination and arrange for family members to pick up the passengers. Id.

Santos-Bueno asked "Junior" if the people in the van were illegal and was told that if he wanted to work, not to ask any questions. Id. Santos-Bueno stated that based on the appearance of the passengers that he believed they were undocumented aliens. Id. Santos-Bueno stated that he felt if they were legal that they would have traveled in a bus where they would have been more comfortable, with their own seat, instead of crammed in a van. Id. Santos-Bueno also admitted that he too had previously crossed illegally into the United States. Santos-Bueno stated that he knew that it was against the law to drive illegal aliens from Dallas, Texas to Boston, MA, but that he needed the money so he did it anyway. Id.

Santos-Bueno stated that he was unsure how much money he would be paid for the trip, but "Junior" told him between $400.00 and $600.00, to be paid upon his return to Texas. Santos-Bueno stated that prior to reaching Massachusetts, three passengers had

5

been dropped off in Virginia, two passengers were dropped off in New York, and two passengers were dropped off in Connecticut. Exhibit A, p. 9. Santos-Bueno stated that in conversation with the passengers they told him they had entered the United States by crossing the border about one week ago. Exhibit A, p. 9; Exhibit C, p. 5. Five of the fourteen illegal aliens were deposed and admitted entering the country illegally, identifying Santos-Bueno as one of the drivers of the van who picked them up at a house in Dallas. The illegal aliens denied speaking with Santos-Bueno or Malagon-Lara about their travels. Exhibit C, p. 5.

**ARGUMENT**

**THE MAGISTRATE JUDGE CORRECTLY DETAINED SANTOS-BUENO AS A FLIGHT RISK**

In United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990), the First Circuit held that a district judge must conduct a "de novo review" of a contested detention order issued by a magistrate judge. Although this Court must conduct a de novo review, it does not mean that it must conduct a de novo hearing. Under Tortora, the district court must make an independent determination of the detention decision. In doing so, the district court may reject the magistrate's fact finding and start the hearing process anew, or may accept that fact finding and hear additional facts and argument. One of the cases on which Tortora relies, United State v. Koenig, 912 F.2d 1190 (9th Cir.

1990), aptly summarized the district court's power and obligation in this regard:

> the district court ... [need not] start over in every case, and proceed as if the magistrate's decision and findings did not exist. The district court erred, however, in ruling that it could review the magistrate's findings under a "clearly erroneous" standard of deference. It should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate. The point is that the district court is to make its own "de novo" determinations of facts, whether different from or an adoption of the findings of the magistrate.

912 F.2d at 1193.[1]

In this case, the government moved for detention pursuant to and 18 U.S.C. § 3142 (f)(2)(A) (serious risk of flight).

---

[1] The other cases cited by Tortora are to the same effect. See United States v. Hurtado, 779 F.2d 1467, 1480 (11th Cir. 1985) (district court must conduct an independent review); United States v. Maull, 773 F.2d 1479, 1481-2 (8th Cir. 1985) (en banc) (district court to conduct de novo review of detention issue, and could hold hearing; court also empowered to accept stipulated facts in such a de novo proceeding); United States v. Delker, 757 F.2d 1390, 1393-94 & n. 3 (3d Cir. 1985) (district court required to make independent review of magistrate's detention order, although "[i]n most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate" and "may, in an informed exercise of discretion, determine whether additional evidence is desirable" beyond what was presented to the magistrate).

The Magistrate Judge found correctly that Santos-Bueno poses a substantial risk of flight. The Court found the weight of the evidence against the defendant to be substantial. Exhibit C, p. 10.[2] The defendant is a native and citizen of Mexico, who entered the country illegally approximately eight years ago, and remains in the country illegally.[3] An ICE detainer has been

---

[2] The defendant asserts that he will contest the evidence presented and will file motions to suppress his statements to two ICE agents, as well as other evidence. See Defendant's Motion, p. 3. Although the defendant will likely lose such motions, the issue is not properly before the Court in the context of a detention hearing. The relevant statute specifically notes, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f)(2)(B). Consideration of whether evidence could possibly be suppressed would turn a detention hearing into a mini-trial or a preliminary motion to suppress. Such a process is plainly not contemplated by 18 U.S.C. § 3142, and is prohibited by Fed.R.Crim.P. 12. See United States v. Angiulo, 755 F.2d 969, 974 (1st Cir. 1985)(court to give weight to evidence which defendant claims to be illegally obtained in detention hearing); United States v. Tortora, 922 F.2d 880, 886 (1st Cir. 1990)(same); United States v. Apker, 964 F.2d 742, 744 (8th Cir. 1992)(same); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987)(proper procedure is to revise detention determination after full motion to suppress conducted).

[3] The defendant's attorney mistakenly asserts that the defendant has legal status because the defendant simply filed a petition for alien relative (form I-130) in 1999. See Defendant's Motion, pp. 2-3. According to the testimony presented at the detention hearing, the defendant did file an I-130 petition, but nothing more. The defendant has not paid any fine, has not offered proof of filing for permanent residence status, has not been granted any lawful status by the Attorney General, and is currently in the country illegally. See 8 U.S.C. §1255(i). The Defendant's erroneous assertion is based on a letter written by an lawyer hired by defendant's family who is not of record in this case. The lawyer provided the defendant's present criminal defense attorney with factual assumptions and legal predictions

lodged against the defendant and the defendant currently faces deportation proceedings and probable deportation, if convicted. The defendant has no employment, no family ties to Massachusetts, no property, no financial resources and no contacts to the District of Massachusetts. The Court found that the defendant faces a maximum sentence of 10 years if convicted with a probable Guidelines sentencing range of 10-16 months. That assumes the Defendant accepts responsibility and pleads guilty. After a trial, the defendant actually faces 18-24 months of imprisonment, assuming that the defendant has no criminal history.

The defendant has simply presented insufficient credible evidence to support any position other than detention. Given the facts determined at the detention hearing, the Magistrate Judge Swartwood correctly found Santos-Bueno to be an unacceptable risk of flight which cannot be reasonably addressed with conditions of release.

---

based on a brief conversation between the Defendant's wife and a lawyer. See Defendant's Motion, Exhibit H. Magistrate Judge Swartwood declined to accept an oral proffer of this information, and this Court should, too. The transcript of the detention hearing is being prepared and will be forwarded to the Court once completed.

**CONCLUSION**

For the foregoing reasons, the motion to review the Magistrate Judge's detention order should be denied, and Santos-Bueno should be detained.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

By:     /s/ Paul G. Casey
                PAUL G. CASEY
                Assistant U.S. Attorney

CERTIFICATE OF SERVICE

    This is to certify that I have served upon Page Kelley, Esq., Federal Defender Office, 408 Atlantic Avenue, 3rd Floor, Boston, MA 02110, a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery this 2nd day of November, 2004.

                                    PAUL G. CASEY
                                    Assistant U.S. Attorney