# EXHIBIT A

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

**V.**

Jose Santos Bueno
DOB: 12/15/71
Enrique Malagon-Lara
DOB: 07/15/62
(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: $04 - 1820 - CBS$

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about _____ August 13, 2004 _____ in _____ Worcester _____ county, in the ____ District of _____ Massachusetts _____ defendant(s) did, (Track Statutory Language of Offense)

knowing and in reckless disregard of the fact that certain aliens have come to, entered, or remain in the United States in violation of law, transport and move and attempt to transport and move such aliens within the United States by means of motor vehicle transportation, in furtherance of such violation of law

in violation of Title _____ 8 _____ United States Code, Section(s) _____ 1324(a)(1)(A)(ii) _____.

I further state that I am a(n) _____ Special Agent, I.C.E. _____ and that this complaint is based on the following
<br>Official Title
facts:

see attached affidavit

Continued on the attached sheet and made a part hereof:     ☒ Yes     ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

_August 13, 2004_____     at     _____ Boston, MA _____
Date                                                                    City and State

LAWRENCE P. COHEN
UNITED STATES MAGISTRATE JUDGE                    _____
Name & Title of Judicial Officer                                    Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## EXHIBIT "A"

## AFFIDAVIT OF SPECIAL AGENT GLEN FITZPATRICK

I, Glen Fitzpatrick, having been duly sworn, do hereby depose and state as follows:

1.    I am a Special Agent with Immigration and Customs Enforcement ("ICE"), formerly the United States Immigration and Naturalization Service ("INS"), and have been so employed since May of 1992.  Among other duties, I am assigned to investigate alien smuggling organizations and practices.

2.    I am aware that bringing in, harboring, and transporting an alien who is present in the United States in violation of law, is a violation of Title 8, United States Code, Section 1324 (a)(1)(A)(ii).

3.    This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and agents of this agency.  This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation but is submitted in support of an application for a criminal complaint against JOSE SANTOS BUENO ("BUENO"), d.o.b. 12/15/71, and ENRIQUE MALAGON-LARA ("MALAGON"), d.o.b. 07/15/62, charging both with a violation of 8 U.S.C. §1324 (a)(1)(A)(ii).

OVERVIEW OF ALIEN SMUGGLING

4. From my training, I know that, while no cases are alike, there are usually several different individuals and means of transportation that an alien will encounter throughout the smuggling route from their home country to the United States border, and then to the final destination within the United States from their home country.

5. For example, once a smuggled alien reaches the United States, the alien will usually be taken to a "safe house" or "drop house." Here, a group of smuggled aliens will wait until they can be moved either to their final destination or another "safe house." When the group is ready to be moved, they may be taken to a staging location at which point, they will meet one or more guides, also known as "coyotes," who will transport them to either another or their final locations.

6. Aliens also pay, in some form or fashion, in order to be smuggled into the United States. The manner and means of payment also vary. For example, an alien may pay a sum up front while still in their home country, and pay the balance upon reaching their final destination.

THE INSTANT OFFENSE/ENCOUNTER WITHIN THE UNITED STATES

7. On Friday August 13, 2004, ICE Boston received information that a passenger van, white in color, bearing

Texas license plate 7CFP07, was en route to the Boston area.
The van was alleged to contain multiple Brazilian nationals
illegally present within the United States.   ICE contacted
the Massachusetts State Police and requested assistance in
locating the vehicle.

8.   Massachusetts State Police located the vehicle
travelling eastbound on the Massachusetts Turnpike and
proceeded to make a traffic stop of the vehicle based upon
the excessive speed of the vehicle.  I was present at the
time of the stop.  The vehicle was stopped at the 108-mile
marker in Southboro, Massachusetts.

9.   When troopers approached the vehicle, they observed
a number of people in the van.  The troopers requested
further information about the vehicle from the driver, who
was later identified as BUENO.  BUENO presented the trooper
with a Texas drivers license and indicated he was
transporting the "passengers" from Texas to Massachusetts
and other locations within the United States.  BUENO
indicated that the passenger later identified as MALAGON was
in fact a second driver.  ICE agents on the scene, including
me, further identified the seven "passengers" as Brazilian
nationals illegally within the United States.

THE PASSENGERS/ALIENS

10. During the course of this investigation, ICE agents determined that the seven "passengers" were all Brazilian nationals who recently left Brazil, traveled to Mexico, and were now present illegally in the United States. Investigation also revealed that one of the "passengers" had previously been deported from the United States. Each of the seven aliens had a Brazilian passport, which indicated that each recently traveled from Brazil into Mexico. Each passport had an admission stamp which indicated their entry into Mexico. None of the seven aliens had a required United States visa or other form of immigration document which indicated a legal entry into the United States. Except for a single backpack, none of the "passengers" had any luggage in the van.

11. During the course of the investigation, the seven aliens were identified a (1) Creusa Maria Nunes DeOliveira; (2) Rozinei Caitano DaSilva; (3) Marcio Rodrigues DosSantos; (4) Weber Faria; (5) Carlos Alberto Moreira; (6) Arnaldo Sebastiao Simoes; and (7) Edilson Emidio DaSilva.

12. Based upon information obtained from various interviews of the Brazilian nationals and from documents, it was determined that each of the aliens paid or agreed to pay

a sum of money in order to be smuggled into the United
States.  The amount of payment ranged between $2,500.00 and
$11,000.00 in United States funds.

    13.  Each of the aliens arrived in Mexico within the
last month and then were smuggled across the United
States/Mexico border and were eventually transported to the
Dallas, Texas area.  In Dallas the aliens were met by BUENO
and MALAGON who drove the van which was ultimately
encountered in the Boston, MA area.  Originally there were
fourteen "passengers" in the van.  Seven of the passengers
were dropped off at various locations, including Virginia,
New York, and Connecticut while en route to the Boston, MA
area.

    14.  During the course of this investigation agents
observed various papers lying on the floor of the van
between the driver's and front passenger's seat.  This list
contained, among other things, the names of the seven
"passenger" in the van at the time it was stopped; the
notation "paid" with respect to each of the seven; a
destination; and a telephone contact.  The letterhead on the
list indicates a company name of "Oxford Tours".  A copy of
the list is attached as Exhibit A.

INTERVIEW WITH MALAGON

15.  After being advised of his rights in his native
language, and after agreeing to waive those rights, MALAGON
spoke with investigators.  A summary of the information
provided by MALAGON is as follows: He admitted that he and
BUENO were paid to drive the vehicle in question and its
passengers from Dallas, Texas to Virginia, New Jersey, New
York, Connecticut, and Massachusetts.  He identified his
boss as "Alfonso" LNU.  MALAGON indicated he had made one
other trip of the same type, transporting approximately the
same number of persons.  MALAGON stated that he was to be
paid $600.00 for driving the van.

16.  With respect to this most recent trip, MALAGON
claimed that he was unsure if the passengers were illegally
present within the United States.  MALAGON stated that he
could not understand the passengers, as they were not
speaking Spanish.  MALAGON stated that prior to dropping the
passengers off, either he or BUENO would place a call to the
telephone contact on the list.  A person would then meet the
van and the passenger would be dropped off without, to his
knowledge, paying any money.

INTERVIEW WITH BUENO

17. After being advised of his rights in his native
language, and after agreeing to waive those rights, BUENO
spoke to investigators. A summary of the information
provided by BUENO is as follows: He admitted that he and
MALAGON were paid to drive the vehicle in question and its
passengers from Dallas, Texas to Virginia, New York,
Connecticut, and Massachusetts. He stated that this was his
first time driving for the tour company. He stated that a
man known to him as "Junior" met him at a gas station in
Dallas, Texas with the van in question full of people.
"Junior" provided BUENO with a paper with the name "Oxford
Tours" across the top. BUENO stated that the paper was a
list of fourteen individuals whose names corresponded to the
passengers in the van. BUENO stated that "Junior"
instructed him to call the contact telephone numbers on the
list when he was getting close to the destination and
arrange for family members to pick up the passengers. BUENO
stated that he asked "Junior" if the people in the van were
illegal. "Junior" told him that if he wanted to work not to
ask any questions. BUENO stated that based on the
appearance of the passengers that they were undocumented
aliens. BUENO stated that he felt if they were legal that
they would have traveled in a bus where they would have been

more comfortable, with their own seat, instead of crammed in a van. BUENO stated that he knew that it was against the law to drive illegal aliens from Dallas, Texas to Boston, MA, but that he needed the money so he did it anyway. BUENO stated that was unsure how much money he would be paid for the trip, but "Junior" told him between $400.00 and $500.00, to be paid upon his return to Texas. BUENO stated that prior to reaching Massachusetts, three passengers had been dropped off in Virginia, two passengers were dropped off in New York, and two passengers were dropped off in Connecticut. BUENO stated that in conversation with the passengers they told him they had entered the United States by crossing the border about one week ago.

OXFORD TOURS

18. On Friday May 28, 2004, ICE agents responded to a request for assistance from the Massachusetts Bay Transportation Authority ("MBTA") Police after they encountered a van containing a number of sleeping people at the Sullivan Square Orange Line "T" stop parking lot. Upon questioning the driver, who was later identified as EDGAR JAVIER RAMOS, d.o.b. 5/17/72, it was learned that he was working for a tour company and was transporting the passengers from Texas to Massachusetts and other locations along the eastern seaboard. RAMOS presented numerous papers

to the officer to include a list containing, among other things, names: the notation "pagado" which means "paid" in Spanish; and a destination. The letterhead on the list indicated the company name of "OXFORD TOURS".

19. During the course of the prior investigation, ICE agents determined that the five passengers contained within the van were Brazilian nationals illegally present within the United States. All of the Brazilian nationals had been smuggled into the United States across the United States/Mexico border shortly before they were found in Massachusetts.

20. RAMOS, and a second driver in the same van, identified as JOHN F. MEHIA, d.o.b. 09/11/70, are presently under indictment in the United States District Court for the District of Massachusetts, charged with violations of 8 U.S.C. §1324 (a)(1)(A)(ii).

CONCLUSION

21. Based on the foregoing information, I believe probable cause exists to conclude that JOSE SANTOS BUENO, d.o.b. 12/15/71, and ENRIQUE MALAGON-LARA, d.o.b. 07/15/62, did, knowing and in reckless disregard of the fact that certain aliens have come to, entered, and remain in the United States in violation of law, transported or moved or attempted to transport or move such aliens within the United

States by means of transportation or otherwise, in

furtherance of such violation of law, in violation of 8

U.S.C. §1324(a)(1)(A)(ii).

Glen Fitzpatrick
Special Agent
United States Immigration
And Customs Enforcement

Subscribed and sworn to before me this 13th day of August,
2004.

LAWRENCE P. COHEN
United States Magistrate Judge

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                              )   CRIMINAL NO. **4:04CR40023-FDS**
         v.               )
                              )   VIOLATION: 8 U.S.C.
                              )   §1324(a)(1)(A)(ii)
JOSE SANTOS-BUENO         )   (Transportation of Illegal
                              )   Aliens)

### INDICTMENT

**COUNT ONE:**     8 U.S.C. § 1324(a)(1)(A)(ii) -- Transportation of
Illegal Aliens

The Grand Jury charges:

On or about August 13, 2004, at Southboro, in the District
of Massachusetts and elsewhere,

**JOSE SANTOS-BUENO,**

the defendant herein, knowing and in reckless disregard of the
fact that aliens, had come to, entered and remained in the United
States in violation of law, transported and moved such aliens
within the United States by means of transportation and
otherwise, in furtherance of such violation of law and in
furtherance of private financial gain.

All in violation of Title 8, United States Code, Section
1324(a)(1)(A)(ii); Title 8, United States Code, Section
1324(a)(1)(B)(i), and Title 18, United States Code, Section 2.

**EXHIBIT "B"**

## NOTICE OF ADDITIONAL FACTORS

The Grand Jury further finds the following:

That the offense charged in Count One involved the transporting of six or more unlawful aliens. Accordingly, USSG §2L1.1(b)(2)(A) is applicable to this case.

**A TRUE BILL**

_____
FOREPERSON OF THE GRAND JURY

_____
PAUL G. CASEY
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; September 8, 2004.  *at 1:35pm*

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK